<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| NEW VERNON EQUITIES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> GLOBAL TRANSPORT AND LOGISTICS, INC, *et al.*, <br><br> Defendants. | Civil Action No. 25-14254 (SDW) (JBC) <br><br> **OPINION** <br><br> March 16, 2026 |

**WIGENTON**, District Judge.

Before this Court is Defendants Birchwood Capital Partners, LLC ("Birchwood"), Global Transport and Logistics, Inc. ("GTL"), and William Walsh's ("Walsh") (collectively, "Defendants") Partial Motion to Dismiss (D.E. 5 ("Motion")) Plaintiff New Vernon Equities, LLC's ("NVE") Complaint ("Compl." (D.E. 1-1)). Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331. Venue is proper pursuant to 28 U.S.C. § 1441. This opinion is issued without oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78. For the reasons stated herein, the Motion is **GRANTED**.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises from unpaid notes between Plaintiff NVE, a corporation with its principal place of business in New Jersey and Defendant GTL, a Wyoming corporation with its principal place of business in New Jersey. (Compl. ¶¶ 1–2, 20–33.) In March 2023, Defendant Walsh, the President of GTL, approached Plaintiff with a "highly-profitable 'investment' opportunity", in the form of a loan to GTL. (*Id.* ¶¶ 4, 12–13.) GTL is controlled by Walsh and his company, Birchwood Partners, LLC ("Birchwood"). (*Id.* ¶ 13.) Walsh proposed the following investment

1

structure:  Plaintiff would lend $2,000,000 to GTL with no payments due for ninety days, and then GTL would repay the loan in six monthly installments, in addition to selling 8,000 shares of GTL to Plaintiff as a partial payment towards the loan, which Plaintiff believed to have significant value. (*Id.* ¶¶ 14–15, 18.)  Walsh described the investment as sound because GTL is a coal producer with coal mine leases in Kentucky.  (*Id.* ¶ 16.)  Plaintiff further believed that the loan was insulated from fluctuations in coal prices or demand, as GTL would control the coal to maximize profits, or alternatively could sublease or sell the leases to recover Plaintiff's investment.  (*Id.* ¶ 17.)  Given the parties' prior familiarity from working in the same building, Plaintiff trusted Walsh and relied upon his representation of the coal mine leases.  (*Id.* ¶ 19.)

On March 3, 2023, Plaintiff lent the requested $2,000,000 to GTL.  (*Id.* ¶ 20.)  Like Walsh proposed, the parties agreed that no payments would be due for ninety days and that payments would be made starting on June 3, 2023 and ending in November 2023 (the "March Loan").  (*Id.*) By November 2023, GTL had only repaid a fraction of its total loan balance but in December 2023, Walsh and GTL nevertheless asked Plaintiff to invest an additional $500,000.  (*Id.* ¶¶ 21–22.) Plaintiff was reluctant to reinvest after GTL's initial default, so Walsh emphasized that they had a coal deal under contract and just needed the funds to produce the large order of coal.  (*Id.* ¶¶ 23–24.)  Walsh represented that after this deal goes through, GTL would be able to pay back the past due balance on the March Loan and the new loan.  (*Id.* ¶ 26.)  Walsh further promised to personally guaranty the second loan and promised Plaintiff an additional 5% ownership interest in GTL.  (*Id.* ¶¶ 27–28.)  Relying on those representations, Plaintiff made the second loan to GTL on December 6, 2023 (the "December Loan").  (*Id.* ¶ 29.)

After receiving the December Loan, GTL never paid Plaintiff again, which Walsh and GTL attributed to the buyer's rejection of the coal order.  (*Id.* ¶¶ 33–34.)  Further, Walsh never

personally guaranteed the December Loan, and Plaintiff never received the additional 5% interest in GTL.  (*Id.* ¶¶ 31–32.)  On August 29, 2024, Plaintiff notified GTL of its default.  (*Id.* ¶ 37.)  During the subsequent production of GTL's financial documents, Plaintiff discovered that GTL never owned a coal mine lease in Kentucky or anywhere else.  (*Id.* ¶ 38.)  Instead, GTL had an agreement to sell the coal produced by the actual lease holder, acting more like a broker rather than a producer, like it had represented.  (*Id.* ¶¶ 39–40.)

On July 2, 2025, Plaintiff filed a three-count Complaint against Defendants in the Superior Court of New Jersey, Morris County, alleging breach of contract (Count One), fraudulent inducement (Count Two), and a violation of Section 10(b) of the Securities Exchange Act ("securities fraud" claim (Count Three)).  (*See generally* Compl.)  On August 7, 2025, Defendants filed a Notice of Removal removing the matter to this Court.  (D.E. 1.)  On August 28, 2025, Defendants moved to partially dismiss the Complaint, and timely briefing ensued.  (*See generally* D.E. 5, 11, 12.)

## II.   <u>LEGAL STANDARD</u>

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Determining whether allegations are plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

3

When deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, federal courts "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff," and determine "whether [the] plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichik*, 605 F.3d 223, 229 (3d Cir. 2010). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "that the pleader is entitled to relief." *Iqbal, 556 U.S. at 679* (quoting Fed. R. Civ. P. 8(a)(2)). "[L]abels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient to withstand a motion to dismiss. *Twombly*, 550 U.S. at 555.

## III.   DISCUSSION

Defendants seek to dismiss the fraudulent inducement claim (Count Two) and the securities fraud claim (Count Three) against them. (D.E 5-2 at 9–10.) Plaintiff argues that Walsh made multiple misrepresentations—most notably about GTL's ownership of coal mine leases in Kentucky—to fraudulently induce Plaintiff to provide the March and December Loans for the benefit of Walsh himself, GTL, and Birchwood. (Compl. ¶¶ 48–51.) Plaintiff further contends that these misrepresentations led to securities fraud because the sale of securities was "part and parcel" to the March and December Loans and the misrepresentations were intended to induce Plaintiff to purchase shares of GTL. (*Id.* ¶¶ 52–60.) On the fraudulent inducement claim, Defendants argue that Plaintiff fails to state a claim because: (1) Plaintiff fails to allege any actionable representations made by Defendants in connection with the March and December Loans; (2) Plaintiff expressly disclaimed reliance on all of Defendants' representations prior to the March Loan; and (3) the economic loss doctrine bars the claim. (D.E. 5-2 at 18–31.) Defendants assert that the securities fraud claim likewise fails because: (1) Plaintiff does not allege any

4

actionable misrepresentations; (2) the allegations establishing scienter fail to meet the heightened pleading standard for claims under the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 ("PSLRA"); and (3) the Complaint fails to state that Birchwood made any representation at all.[1] (*Id.* at 31–39.)

### A.  Count Two – Fraudulent Inducement

Under New Jersey law, the economic loss doctrine prohibits a plaintiff from recovering in tort damages that are caused by a breach of contract.  *Montclair State Univ. v. Oracle USA, Inc.*, No. 11-2867, 2012 WL 3647427, at *4 (D.N.J. Aug. 23, 2012).  The doctrine maintains the distinction between overlapping tort and contract claims by generally barring the recovery of purely economic losses in tort.  *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 244 (3d Cir. 2010) (quoting *Dean v. Barrett Homes, Inc.*, 968 A.2d 192, 202 (N.J. Super. Ct. App. Div. 2009)).  However, if the tortious conduct is extraneous to the contract, the tort claim may be brought alongside a breach of contract claim.  *Emerson Radio Corp. v. Orion Sales, Inc.*, No. 95-6455, 2000 WL 49361, at *7 (D.N.J. Jan. 10, 2000) ("The critical issue is whether the allegedly tortious conduct is extraneous to the contract.").  An alleged misrepresentation is extraneous to a contract when it breaches a duty that is "separate and distinct from the performance" of the contractual terms.  *Montclair State Univ.*, 2012 WL 3647427 at *5 (citing *Chen v. HD Dimension, Corp.*, No. 10-863, 2010 WL 4721514, at *9 (D.N.J. Nov. 15, 2010)).

---

[1] The Complaint largely fails to allege any particularized allegations against Birchwood, besides that Birchwood was a significant shareholder of GTL and that Walsh acted to benefit Birchwood. (Compl. ¶¶ 13, 36.)  Importantly, the Complaint fails to allege that Birchwood made any representations at all or participated in any deceptive conduct.  Without particularized allegations, Plaintiff has failed to plead a cognizable claim of fraudulent inducement and securities fraud against Birchwood as a matter of law.  Fed. R. Civ. P. 9(b); 15 U.S.C. § 78u-4(b)(1)(B).

Here, the economic loss doctrine bars the fraudulent inducement claim because Plaintiff seeks the same damages for the fraudulent inducement and breach of contract (Count One) claims. (D.E. 5-2 at 29–30.)  For both claims, Plaintiff seeks "not less than $2,000,000.00, plus interest, costs, disbursements and attorney's fees" and does not allege any personal injury or property damage—only purely economic losses, which the doctrine also prohibits.  (*Id.* at 30; Compl. ¶¶ 47, 51.)  Moreover, the fraudulent inducement claim is not extraneous to the contract because Plaintiff directly links the fraudulent conduct to the contract, alleging that the fraudulent misrepresentations in question were "each aimed at inducing Plaintiff to make the March and December Loans to GTL . . ."  (Compl. ¶ 49; D.E. 11 at 9–10.)  Thus, the economic loss doctrine applies to the fraudulent inducement claim and it fails as a matter of law.

### B.  Count Three – Securities Fraud

Courts have long recognized that Section 10(b) of the Securities Exchange Act implies a private cause of action for securities fraud.  *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014) (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730 (1975)).  A plaintiff asserting a Section 10(b) securities fraud claim must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  *Id.* (quoting *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013)).

The PSLRA imposes two heightened pleading requirements for Section 10(b) claims.  *See* 15 U.S.C. § 78u-4(b)(1), (2); *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 309 (2007).  First, the complaint must specify each allegedly misleading statement, provide why the statement was misleading, and if the allegation is made on information and belief, all facts supporting that

6

belief with particularity.  15 U.S.C. § 78u-4(b)(1)(B); *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 252–253 (3d Cir. 2009) (quoting *Winer Fam. Tr. v. Queen*, 503 F.3d 319, 326 (3d Cir. 2007)).  Second, to satisfy scienter—the "intent to deceive, manipulate, or defraud"—a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Institutional Invs. Grp.*, 564 F.3d at 252; 15 U.S.C. § 78u-4(b)(2)(A). A strong inference of scienter must be "cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Tellabs, Inc.*, 551 U.S. 308 at 314.  As a fraud claim, Section 10(b) claims are also subject to Rule 9(b)'s heightened pleading standards, which require the plaintiff to plead the "who, what, when, where and how" of the alleged misconduct.  *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276 (3d Cir. 2006) (citing *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 236 (3d Cir. 2004)); *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1422 (3d Cir. 1997)).

a.  <u>The Complaint Fails to Allege Any Actionable Misrepresentations Made by Defendants Regarding the March and December Loans</u>

Statements and promises regarding future performance, contingent events, future expectations and probabilities are non-actionable opinions that do not constitute misrepresentations, even if they turn out to be wrong or go unfulfilled. *Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 435 (D.N.J. 1998) (citing *Chatlos Sys., Inc. v. Nat'l Cash Reg. Corp.*, 479 F. Supp. 738, 748–749 (D.N.J. 1979)); *Fimbel v. Fimbel Door Corp.*, No. 14-1915, 2014 WL 6992004, at *4 (D.N.J. Dec. 10, 2014) (quoting *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1186 (3d Cir. 1993)).  Similarly, statements that can be characterized as "puffery" or "vague and ill-defined opinions" are not assurances of fact and thus are not misrepresentations.  *Diaz v.*

7

*Johnson Matthey, Inc.*, 869 F. Supp. 1155, 1165 (D.N.J. 1994); *Capano v. Borough of Stone Harbor*, 530 F. Supp. 1254, 1264 (D.N.J. 1982) (holding that the statement "something would be worked out" is too vague and ambiguous to be actionable). A word or provision is ambiguous when it is reasonably susceptible to multiple different interpretations. *Dobrek v. Phelan*, 419 F.3d 259, 264 (3d Cir. 2005) (quoting *Nat'l R.R. Passenger Corp. v. Atchison Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 473, n.27 (1985)). Finally, under Wyoming law[2], a clear disclaimer that a party is not relying on representations outside the written agreement bars a subsequent fraud claim based on those external statements. *See Snyder v. Lovercheck*, 992 P.2d 1079, 1089 (Wyo. 1999).

Here, the Complaint fails to sufficiently allege any actionable misrepresentation by Defendants regarding the March and December Loans. Regarding the March Loan, Plaintiff alleges that Walsh misrepresented that: (1) investing in GTL would be a "highly-profitable 'investment' opportunity, with out-sized gains" because (2) GTL held coal mine leases in Kentucky. (Compl. ¶¶ 12, 16.) First, GTL's statement that the investment would be highly profitable is a classic example of nonactionable opinion and puffery because it is a statement about a future probability with no firm support besides Walsh's own opinion. Second, the assertion that GTL "held" coal leases is too vague to constitute actionable misrepresentation, as the Complaint admits that Plaintiff drew its own inferences from that statement, believing its loan was "insulated" because GTL could maintain control of the coal or sell/sublease the coal mine leases to recover Plaintiff's investment. (*Id.* ¶¶ 17–18.) Additionally, the meaning of "hold" with respect to coal mine leases is ambiguous because it is reasonably susceptible to multiple interpretations— while Plaintiff understood the term to mean that GTL owned the leases, Walsh reasonably meant

---

[2] The Purchase Agreement stipulates that its related transactions are governed by Wyoming law. (D.E. 5-8 at 11–12.)

that they held exclusive agreements to sell the coal produced by those coal mines. (*Id.* ¶¶ 38–39; D.E. 5-2 at 22; D.E. 11 at 8.) Lastly, Plaintiff expressly disclaimed reliance on any representations that are not contained in the Share Purchase Agreement ("Purchase Agreement"), which contained an express disclaimer of reliance on representation outside of the written agreement. (D.E. 5-2 at 23–25; D.E. 5-8 at 7.) The March Loan was a part of the "Closing Deliveries" in the Purchase Agreement, and that GTL "held" coal leases in Kentucky is not memorialized in the agreement. (D.E. 5-8 at 3–5.) Importantly, by signing the Purchase Agreement, Plaintiff agreed that GTL and its officers do not make any representations regarding the "operation of the business of the Company" or the "probable success or profitability of the business of the company . . ." (D.E. 5-8 at 7.)

Regarding the December Loan, Plaintiff alleges that Walsh made four separate misrepresentations: (1) GTL had a large coal deal under contract; (2) that the large influx of cash from the coal order would allow GTL to pay back the past due balance on both Loans; (3) Walsh would personally guaranty the loan; and (4) Plaintiff would receive an additional 5% interest in GTL. Each statement does not meet the standard for misrepresentations. (Compl. ¶¶ 24, 27–28.) The first statement that GTL had a large coal deal under contract does not satisfy the heightened pleading requirements of the PSLRA and Rule 9(b), as it neither explains why the statement was misleading nor describes the when, where, and how of such statement. (*Id.* ¶ 24; D.E. 5-2 at 26.) Although the Complaint alleges that Defendants approached Plaintiff regarding the December Loan sometime in December 2023, it does not specify when, where, or how that statement was made, nor does it clarify whether that was also when Walsh informed Plaintiff about the large coal deal. (Compl. ¶¶ 22–24.) Further, Plaintiff does not factually support its belief that a contracted buyer never existed for the coal deal. (*Id.* ¶ 35.) The second, third, and fourth statements about

9

the influx of cash from the coal order, Walsh's personal guaranty of the loan, and the additional 5% interest in GTL, are all statements and promises about future performance and contingent events that constitute nonactionable opinions and are disclaimed by the Purchase Agreement. (*See supra* Part B.)  Thus, Walsh's statements regarding the March and December Loans do not constitute misrepresentations and do not support the securities fraud claim.

b.  <u>The Complaint Does Not Satisfy Scienter</u>

Under the PSLRA, a plaintiff may establish a strong inference of scienter through specific facts either showing motive and opportunity to commit fraud, or strong circumstantial evidence of conscious misconduct or recklessness.  *GSC Partners CDO Fund*, 368 F.3d at 237 (quoting *In re Burlington*, 114 F.3d at 1418).  Under either method, a plaintiff must state the supporting facts with sufficient particularity.  *See id.* ("[C]atch-all allegations that defendants stood to benefit from wrongdoing and had the opportunity to implement a fraudulent scheme are no longer sufficient. . ."); *In re Digital Island Sec. Litig.*, 357 F.3d 322, 329 (3d Cir. 2004) (citing *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 535 (3d Cir. 1999)).  Applying the same reasoning, generic allegations of benefit to a party cannot give rise to a strong inference of scienter.  *GSC Partners CDO Fund*, 368 F.3d at 237 ("In every corporate transaction, the corporation and its officers have a desire to complete the transaction, and officers will usually reap financial benefits from a successful transaction. Such allegations alone cannot give rise to a 'strong inference' of fraudulent intent.").

Here, the Complaint fails to demonstrate scienter under either method as its allegations regarding scienter consist of legal conclusions without particularized supporting facts.  As to motive and opportunity, the Complaint only alleges that Walsh induced Plaintiff to invest in GTL for the benefit of GTL, himself, and Birchwood—precisely the type of catch-all allegation that

10

cannot give rise to a strong inference of scienter.  (Compl. ¶¶ 53–58; D.E. 5-2 at 34–35.)  The Complaint is otherwise silent as to what, when, where, or how Walsh or Birchwood purportedly benefited from the loan proceeds to GTL and offers no specific allegations showing how investments in GTL directly benefited Walsh or Birchwood, instead asserting only that the loans allowed Walsh to "monetize Birchwood's interest in GTL."  (Compl. ¶ 36.)  As to conscious misconduct or recklessness, the Complaint similarly provides conclusory allegations that Walsh intentionally misrepresented GTL's ownership of coal mine leases to induce Plaintiff into investing in GTL.  (*Id.* ¶¶ 54–55, 57–58.)  Importantly, the Complaint does not explain when and how Walsh came to know that his own representations were false.  (*See generally id.*)  These allegations largely restate the elements of scienter and do not provide any factual basis to allow this Court to draw reasonable inferences regarding Walsh's intentions or state of mind.  *See Tellabs, Inc.*, 551 U.S. 308 at 314.  Thus, the Complaint has failed to satisfy the scienter element and Plaintiff's securities fraud claim fails.

## IV.    <u>CONCLUSION</u>

For the reasons stated above, Defendants' Motion is **GRANTED** and Counts Two and Three of the Complaint are **DISMISSED WITHOUT PREJUDICE**.  Plaintiff shall have thirty (30) days to file an Amended Complaint.  Failure to timely file an Amended Complaint may result in the dismissal of this matter with prejudice.  An appropriate order follows.

/s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:  Clerk
cc:    Parties
       James B. Clark, U.S.M.J.